IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ABDUL KARIM PIRANI, | § | Case No. 12-41916 |
| | § | (Chapter 11) |
| Debtor. | § | |
| | § | |
| ABDUL KARIM PIRANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 12-4114 |
| | § | |
| MALIK BAHARIA, ABDUL HAMID GILANI, NADIRSHA LALANI, and HNM PARTNERS, LLC, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDERS

This matter is before the Court on the motion for summary judgment by the plaintiff, the motion for summary judgment by the defendants, and the counter-motion for summary judgment by the plaintiff in response to the defendants' motion. The parties have consented to trial before this Court. This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I. UNCONTESTED FACTS

In 2008, the plaintiff, Abdul Pirani, and his brother, Nasim Aziz, sought investors for the purpose of buying, renovating and operating a hotel in Sherman, Texas (the "Hotel"). Aziz and Pirani formed Circle Sherman LLC on November 25, 2008, for the purpose of owning the Hotel. Aziz and Pirani proposed to Malik Baharia, Abdul Hamid

1

Gilani and Nadirsha Lalani that they purchase a 50% membership interest in Circle Sherman.

Baharia, Gilani and Lalani formed HNM Partners, LLC for the purpose of holding their 50% membership interest in Circle Sherman. On or about February 6, 2009, Baharia, Gilani and Lalani paid $475,000.00, through HNM, to or on behalf of Circle Sherman. On the same date, Circle Sherman borrowed $2,456,415 from One World Bank ("OWB"). The purpose of the loan was to allow Circle Sherman to purchase and renovate the Hotel. The loan was guaranteed by the plaintiff, the plaintiff's brother, Aziz, and the defendants.

Almost immediately, disputes developed between the members of HNM and Circle Sherman. On or about April 13, 2009, HNM filed a lawsuit in the 134th Judicial District Court of Dallas County Texas entitled *HNM Partners LLC. v. Nasim Aziz, Abdul Karim Pirani, et al.*, Cause No. 09-04232. On August 4, 2009, the parties settled the litigation (the "Settlement Agreement"). As part of the Settlement Agreement, Circle Sherman promised to purchase HNM's membership for $475,000 and to make best efforts to have OWB release the defendants from their guaranties.[1] Circle Sherman did not keep its promises.

Circle Sherman defaulted on the OWB Note. As a result, OWB accelerated the amount due on the Note. In addition, OWB filed a lawsuit against all of the co-guarantors in the 134th Judicial District Court of Dallas County, Texas, in late July 2010. The state court assigned cause number 10-09222 to the suit.

---

[1] Pirani and Aziz each personally guaranteed the amounts due to the defendants under the Settlement Agreement

2

In September 2010, Pirani took over the management of Circle Sherman from his brother. In October 2010, in order to try to avoid a foreclosure sale of the Hotel, Pirani put Circle Sherman into bankruptcy. In its "Schedule A – Real Property," Circle Sherman stated that the Hotel had a value of $3,500,000.00.[2]

OWB foreclosed on the Hotel on August 2, 2011, for the bid price of $2,350,000.[3] On September 28, 2011, in the state court guaranty action, Baharia, Gilani, Lalani and HNM filed cross-claims against OWB for tortious interference as well as a cross-claim against Pirani and Aziz for breaching their obligations under the Settlement Agreement. Baharia, Gilani, Lalani and HNM filed a motion for partial summary judgment against Pirani and Aziz. On February 13, 2012, the state court granted their motion on the issue of whether Pirani had breached his obligations under the Settlement Agreement. Pirani filed a motion for reconsideration or to set aside the summary judgment.

On March 6, 2012, OWB announced to the state court that it had settled with Pirani. OWB signed an assignment dated March 6, 2012, whereby OWB assigned, among other things, its claims in the pending guaranty action to DFW Fuel City. The state court called the guaranty action to trial the next day. No one appeared to prosecute OWB's claims. At trial, therefore, the state court dismissed OWB's claim for breach of the note and guaranty against all of the defendants except Pirani. Pirani and Aziz also failed to appear for trial, and the state court dismissed their cross-claim against Baharia, Gilani, Lalani and HNM as well.

---

[2] Pirani signed and approved Schedule A under penalty of perjury as the "Manager" of Circle Sherman.
[3] On August 19, 2011, in the state court guaranty action case, Pirani filed Defendants' Motion for Determination of Fair Market Value pursuant to Section 51.003, Texas Property Code, asking the state court to value the Hotel at $3,290,000.00. On September 23, 2011, Pirani filed a Defendants' Designation of Expert in which he again asserted that the Market Value of the Hotel was $3,290,000.00.

The state court entered a final judgment of dismissal on March 7, 2012.[4] On the same date, contemporaneously with the judgment, the state court entered a separate order that severed the dispute over the partial summary judgment awarded against Pirani. The state court assigned cause number 10-09222a to the severed proceeding. In the severed action, on June 14, 2012, the state court entered an Agreed Final Judgment awarding Baharia, Gilani, Lalani and HNM a judgment against Pirani for actual damages in the amount of $475,000, among other things.

Baharia, Gilani, Lalani and HNM were not parties to the settlement of the guaranty action entered into by Pirani and OWB.[5] According to an affidavit Pirani filed in state court, OWB assigned the note and the parties' guaranties of Circle Sherman's indebtedness under the note to DFW Fuel City, Inc. as part of the settlement agreement. In April 2013, Pirani testified in a deposition in connection with this adversary proceeding that DFW Fuel City paid OWB some amount he could not recall for the assignment. He testified that DFW Fuel City then assigned the note and guaranty to Pirani. He further testified that he did not think he paid DFW Fuel City for that assignment.

Pirani offers different (or more precise) testimony in response to the motion for summary judgment filed by Baharia, Gilani, Lalani and HNM -- the defendants in this adversary proceeding. In an affidavit notarized in May 2013, Pirani states that DFW Fuel City paid OWB $300,000 for the assignment of the note and guaranties. He further states

---

[4] The original dismissal was with prejudice. The state court entered an amended judgment on April 17, 2012, providing that the dismissal was without prejudice.

[5] The defendants object to portions of an affidavit by Pirani in which he describes the settlement negotiations with OWB. The defendants also object to Pirani's statement in the affidavit that DFW Fuel City Inc. paid $300,000 to OWB for the assignment since the statement is contrary to Pirani's prior deposition testimony, and Pirani failed to produce any documents substantiating the assertion.

4

that DFW Fuel City transferred the note and guaranties to him in May 2012 in exchange for his cancellation of indebtedness arising from an advance he made to DFW Fuel City in March 2012.

Before the defendants could begin collection of the Agreed Final Judgment, Pirani filed a petition for relief under chapter 11 of the Bankruptcy Code on July 17, 2012. He initiated this adversary proceeding the next day. In the disclosure statement filed with his plan of reorganization, Pirani described this proceeding as follows:

> On June 15, 2012, four of Debtor's creditors obtained a judgment against Debtor arising from a prior settlement agreement which Debtor had guaranteed ("Settlement Creditors"). Debtor is the owner and holder of a promissory note ("Note") and Guaranty which evidences the Settlement Creditors guaranty of the Note. Debtor has filed an adversary proceeding in his Bankruptcy Proceedings against the Settlement Creditors on the Guaranty, Abdul Karim Pirani v. Malik Baharia, et al; Adversary Proceeding No. 12-04114, requesting judgment against them in an amount in excess of $900,000.00, which is substantially greater in amount than the amount claimed by the Settlement Creditors based on their judgment.

## II. Applicable Law

### *A. Summary Judgment Standard*

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056(c); FED. R. CIV. P. 56(a). A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Piazza's Seafood World, LLC v. Odom,* 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal–Mart Stores, Inc.,* 337 F.Supp.2d 887, 891 (E.D. Tex. 2004). If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett,* 337 F.Supp.2d at 891; *see also Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir. 1993). The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett,* 337 F.Supp.2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(c)(1); *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F.Supp.2d at 891. Thus, summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### B. Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defenses and Counterclaims

In this case, Pirani is asserting several distinct claims against the defendants. He is standing in OWB's shoes to assert claims for breach of the note and guaranty agreements, and he is asserting a claim for contribution against the defendants as co-guarantors of Circle Sherman's obligations to OWB. The defendants have asserted a litany of defenses to Pirani's claims as well as counterclaims. Pirani seeks summary judgment that the defendants' counterclaims and affirmative defenses are barred by the doctrine of *res judicata* or claim preclusion.

Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that

action. *Oreck Direct, LLC v. Dyson, Inc.,* 560 F.3d 398, 401 (5th Cir. 2009) (citing *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). When asked to give preclusive effect to state court judgments, federal courts turn to the preclusion principles of the state whose decision is invoked as a bar to further litigation. *Prod. Supply Co. v. Fry Steel Inc.,* 74 F.3d 76, 78 (5th Cir. 1996). Under Texas law, *res judicata* requires: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties in the second action or their privies; and (3) claims in the second action that were or could have been raised in the first. *Igal v. Brightstar Info. Tech. Grp., Inc.,* 250 S.W.3d 78, 86 (Tex. 2008).

In this case, Pirani's argument for claim preclusion is based on the Agreed Final Judgment entered by the state court. As an initial matter, his argument ignores critical events in the underlying guaranty suit. The Agreed Final Judgment was not a judgment on the merits of OWB's suit on the parties' guaranties of Circle Sherman's indebtedness to OWB. The Agreed Final Judgment, as previously discussed, arose out of the defendants' counterclaims against Pirani. After the state court entered a partial summary judgment for the defendants on their claim that Pirani had breached his obligations to them under the Settlement Agreement, the state court severed the dispute over whether to reconsider its summary judgment. The severed dispute then proceeded to an Agreed Final Judgment.

Pirani argues that claim preclusion applies because the defendants did not present their claims and defenses to OWB's action to collect on their guaranties in the severed proceeding. His argument, when held up against the facts of the underlying litigation and, specifically, the severance of the summary judgment dispute from the guaranty suit, makes no sense. Furthermore, his argument fails to account for the fact that after the

7

state court called the guaranty action for trial, the state court dismissed OWB's claims against the defendants. In Texas, a dismissal is equivalent to a suit never having been filed. *See, e.g., Clary Corp. v. Smith,* 949 S.W.2d 452, 459 (Tex. App. -- Fort Worth 1997, writ denied) (citing, among others, *Cunningham v. Fox,* 879 S.W.2d 210, 212 (Tex. App. -- Houston [14th Dist.] 1994, writ denied)). Pirani is bound by the dismissal to the extent he is seeking to assert OWB's claims against the defendants as the assignee of the note and guaranty agreements.

The Court, therefore, concludes that the doctrine of claim preclusion does not apply to the claims and affirmative defenses asserted by the defendants in this proceeding. The Court further concludes that Pirani has failed to establish that he is entitled to a summary judgment dismissing the defendants' counterclaims and affirmative defenses as a matter of law.

### C. Defendants' Motion for Summary Judgment Based on Judicial Admission

The defendants seek a summary judgment that Pirani has admitted the value of the Hotel is far higher than the foreclosure price of $2,350,000. The defendants argue that Pirani's statements to this Court and to the state court regarding the value of the Hotel are judicial admissions that preclude Pirani from asserting a different (lower) value in this adversary proceeding in order to obtain a large judgment for the deficiency.

The law makes a distinction between (1) treating an allegation made by a party in a *different* case as conclusively binding on that party, under the doctrine of judicial estoppel, on the one hand; and (2) treating such a statement as a mere evidentiary admission, which is admissible against but not conclusively binding on the party, on the other hand. While an admission made by a party in a pleading in the *same* case

sometimes may be deemed binding as a "judicial admission," an admission made in a *different* case is not conclusively binding unless judicial estoppel applies. One treatise explains the distinction in this way:

> Judicial admissions must be distinguished from ordinary evidentiary admissions. A judicial admission is binding upon the party making it; it may not be controverted at trial or on appeal. Included within this category are admissions in the pleadings in the proceeding, stipulations and admissions pursuant to request to admit.... **Ordinary evidentiary admissions, on the other hand, may be controverted or explained by the party. Within this category fall pleadings in another proceeding,** superseded or withdrawn pleadings in the same proceeding, answers to interrogatories, as well as other statements admissible under [Federal Evidence] Rule 801(d)(2).

Hon. Barry Russell, *Bankruptcy Evidence Manual,* § 801:22, at 1507–08 (emphasis added) (citations omitted).

As the Fifth Circuit has explained, a judicial admission is "a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making [it]," because for a statement of counsel to qualify as a judicial admission "it must be made intentionally as a waiver, releasing the opponent from proof of fact." *Martinez v. Bally's Louisiana, Inc.,* 244 F.3d 474, 476 (5th Cir. 2001) (citation omitted). An evidentiary admission is a statement of assertion or concession made for some independent purpose. *Id.* at 476–77.

In this case, the statements cited by the defendants did not occur in this adversary proceeding or in Pirani's bankruptcy case. Rather, the statements were made in the state court guaranty action and in the bankruptcy case of Circle Sherman. The defendants have not established that judicial estoppel applies.[6] The statements may be admissible

---

[6] Judicial estoppel is considered to be a matter of federal procedure, and federal law governs its application. *See, e.g., Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996). "In this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped. First, it must be shown that the

9

and relevant, but they do not conclusively establish the value of the Hotel in this adversary proceeding. The Court, therefore, concludes that the defendants have failed to show that they are entitled to summary judgment that Pirani's prior statements as to the value of the Hotel are judicial admissions.[7]

### D. Defendants' Motion for Summary Judgment Denying Plaintiff's Breach of Guaranty Claim

Finally, the defendants' seek a summary judgment denying Pirani's claim that they are liable to him, as the assignee of OWB, for breaching their guaranties of Circle Sherman's indebtedness to OWB. Pirani originally sought a judgment for the full amount of the difference between the foreclosure price and the amount owed to OWB at the time of foreclosure plus various costs and expenses. In response to the defendants' motion, he reduced his request to 5/6ths of that amount as an acknowledgment of his status as one of six co-guarantors of Circle Sherman's indebtedness.

As the defendants point out, however, Pirani's status as a co-guarantor limits him to seeking their contributive shares of what he paid for the assignment of the note and guaranties. *See, e.g., Byrd v. Estate of Nelms*, 154 S.W.3d 149, 165 (Tex. App. – Waco, 2004) (calculating parties' contributive shares based on what a co-guarantor paid for the assignment of a note). As the state appellate court explained in *Byrd*: "For well over a hundred years, it has been a 'general and familiar rule of law' that, as among coguarantors, each will bear his proportional part of the burden to the effect that should

---

position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citations and internal quotations omitted). *Hall* further recognized that the Supreme Court had endorsed a third consideration: "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hall,* 327 F.3d at 399 (*citing New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

[7] In light of this analysis, the Court need not reach Pirani's counter-motion for summary judgment on the judicial admission issue. The defendants' objection to Pirani's counter-motion as untimely is, therefore, moot.

10

one of them pay more than his proportional part, the others will contribute equally to indemnify him for any amount in excess of his proportional part." *Id.* (citing cases). Furthermore, in the absence of an express agreement among the guarantors to the contrary, the contributive share of each of the defendants is limited to the amount Pirani paid for the assignment divided by the number of co-guarantors. *See id.* (citing RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 57 (1996)).

As an alternative to recovering a judgment from the defendants for 5/6ths of the amount of any deficiency relating to OWB's foreclosure on the Hotel, Pirani seeks contribution from the defendants with respect to his settlement with OWB. It is not clear from the summary judgment record what Pirani paid to OWB to settle the guaranty litigation, if anything, or what Pirani paid for the assignment of the note and guaranties, if anything. Significantly, Pirani does not contend that he paid OWB or DFW Fuel City the balance due on the note in exchange for the assignment of the note and guaranties. Rather, according to Pirani, DFW Fuel City paid OWB $300,000 to settle OWB's claims against Pirani and for an assignment of the note and guaranties. Pirani contends that he subsequently paid DFW Fuel City an undisclosed amount for the assignment of the note and guaranties to him.

For all the forgoing reasons, the Court concludes that the defendants have not established that they are entitled to judgment on Pirani's breach of guaranty claim as a matter of law. The Court further concludes that genuine issues of material fact exist with respect to Pirani's claim for contribution from the defendants as co-guarantors. Genuine issues of material fact exist with respect to, among other things, whether Pirani's

11

payment for the assignment was more than his own proportionate liability under his guaranty of Circle Sherman's indebtedness to OWB.

### III. CONCLUSION

For all the foregoing reasons, the Court concludes that the motions for summary judgment should be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for a summary judgment dismissing the defendants' counterclaims and affirmative defenses is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for a summary judgment based on judicial admissions is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants' motion for a summary judgment on the plaintiff's claim for breach of their guaranty is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants' objections to the plaintiff's summary judgment evidence, and the plaintiff's cross-motion for summary judgment, are **DENIED** as moot in light of this Court's memorandum opinion.

Signed on 9/16/2013

_Brenda T. Rhoades_ MD
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE