
EOD
03/31/2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ABDUL KARIM PIRANI, | § | Case No. 12-41916 |
| | § | (Chapter 11) |
| Debtor. | § | |
| | § | |
| ABDUL KARIM PIRANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 12-4114 |
| | § | |
| MALIK BAHARIA, ABDUL HAMID | § | |
| GILANI, NADIRSHA LALANI, and | § | |
| HNM PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This proceeding is before the Court following trial of the plaintiff's adversary complaint. The Court took the matter under advisement in order to prepare a detailed written ruling. This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I. JURISDICTION

In the underlying bankruptcy case, the defendants filed a proof of claim against the bankruptcy estate in the amount of $620,612.51 based on a state court judgment. In this proceeding, the plaintiff objects to the allowance of the defendants' claim and asserts a claim for breach of contract against the defendants. The defendants deny the plaintiff's claim and assert affirmative defenses as well as counterclaims against the plaintiff for breach of fiduciary duty and breach of contract. The parties' state law claims and

counterclaims must be decided in the context of the claim objection and, therefore, this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (C).

## II.  SUMMARY OF THE DISPUTE

This adversary proceeding arises out of disputes between former business partners.  As discussed more fully below, the defendants in this adversary proceeding invested $475,000 in a company operated by the plaintiff, Abdul Pirani.  They also joined Pirani in a guaranty of a loan the company obtained from a bank.

Pirani and the defendants immediately had a falling out.  Pirani entered into a settlement with the defendants in which he agreed to return their investment.  Pirani also agreed to use his best efforts to obtain their release from the guaranty.

The bank sued all of the co-guarantors when the company defaulted.  In connection with the guaranty action, the defendants obtained a judgment against Pirani for his breach of the prior settlement requiring the return of their investment.  At around the same time the state court entered the judgment against Pirani, Pirani obtained an assignment of the loan documents from the bank – thereby acquiring the ability to release the defendants from their obligations under the guaranty.  However, Pirani did not release the defendants as he had promised he would do.  In further breach of the settlement agreement, and to thwart the collection of the state court judgment, Pirani now seeks to collect approximately $1 million from his co-guarantors based on their alleged breach of the guaranty.  Pirani also objects to the allowance of the defendants' unsecured claim for the state court judgment.

## III.  FINDINGS OF FACT

In 2008, Pirani and his brother, Nasim Aziz, sought investors for the purpose of buying, renovating and operating a hotel in Sherman, Texas (the "Hotel").  Aziz and Pirani formed Circle Sherman LLC on November 25, 2008, for the purpose of owning the Hotel.  Pirani was a member of Circle Sherman and Aziz was its manager.  Aziz and Pirani proposed to Malik Baharia, Abdul Hamid Gilani and Nadirsha Lalani that they purchase a 50% membership interest in Circle Sherman.

Baharia, Gilani and Lalani formed HNM Partners, LLC for the purpose of holding their 50% membership interest in Circle Sherman.  On or about February 6, 2009, Baharia, Gilani and Lalani paid $475,000.00, through HNM, to or on behalf of Circle Sherman.  On the same date, Circle Sherman executed a promissory note in the principal amount of $2,456,415 (the "Note") for the benefit of One World Bank ("OWB") in order to obtain funds to renovate the Hotel.  The plaintiff, the plaintiff's brother, Aziz, and the defendants guaranteed Circle Sherman's obligations to OWB under the Note.

Almost immediately, disputes developed between the members of HNM and Circle Sherman.  On or about April 13, 2009, HNM filed a lawsuit in the 134th Judicial District Court of Dallas County Texas entitled *HNM Partners LLC. v. Nasim Aziz, Abdul Karim Pirani, et al.*, Cause No. 09-04232.  On August 4, 2009, the parties settled the litigation (the "Settlement Agreement").

As part of the Settlement Agreement, HNM agreed to sell, and Circle Sherman promised to purchase, HNM's membership in Circle Sherman for $475,000.  The closing of the sale was to occur upon payment.  With respect to the defendants' guaranties of Circle Sherman's indebtedness, the Settlement Agreement provided that Circle Sherman,

Aziz and Pirani, collectively referred to in the Agreement as the "Company," would make best efforts to have OWB release the defendants or, if such efforts were unsuccessful, that the defendants would be released no later than July 9, 2012.[1]

Circle Sherman, Aziz and Pirani did not keep their promises. Circle Sherman did not purchase HNM's membership. Circle Sherman also defaulted on the OWB Note. As a result of the payment defaults, OWB accelerated the amount due on the Note. OWB also posted the Hotel for foreclosure. In addition, OWB filed a lawsuit against all of the co-guarantors in the 134th Judicial District Court of Dallas County, Texas, in July 2010. The state court assigned cause number 10-09222 to the suit.

In September 2010, Pirani took over the management of Circle Sherman from his brother. In October 2010, in order to avoid a foreclosure sale of the Hotel, Pirani put Circle Sherman into bankruptcy. Circle Sherman's bankruptcy schedules disclosed only two members – Pirani and Aziz.[2]

OWB obtained relief from the automatic stay and foreclosed on the Hotel on August 2, 2011, for the bid price of $2,350,000. The deficiency at the time of the entry of a judgment of foreclosure was $828,190.13. The Court dismissed Circle Sherman's bankruptcy case upon a motion by Circle Sherman.

In Circle Sherman's "Schedule A – Real Property" filed in its bankruptcy case, Circle Sherman stated that the Hotel had a value of $3,500,000.00. Notably, Pirani signed and approved Schedule A under penalty of perjury as the "Manager" of Circle

---

[1] Section 3.2 of the Settlement Agreement provides as follows: In the event that the Company obtains a third party investor for the purpose of purchasing HNM's Membership Interest, the Company shall in good faith make best efforts to have the Bank release Gilani, Baharia and Latani from their personal guaranties of the Loan. If the Company is unable to obtain a release from the Bank of the guaranties, Gilani, Baharaia and Lalani agree to continue to be guarantors of the Loan until July 9, 2012, at which time they shall be released through the Company's refinancing of the Loan or the sale of the Hotel.

[2] Pirani claimed 100% of the tax benefits from loss occasioned by the foreclosure sale of the Hotel.

4

Sherman. The value for the Hotel listed in Schedule A was consistent with Circle Sherman's 2011 tax return, which reported a value of $3,543,834.

In the state court guaranty action, Pirani challenged whether the bid price of the Hotel reflected its fair market value.[3] Pirani took the position that the fair market value of the Hotel was $3,290,000, which reflected a discount for deferred maintenance, at the time of foreclosure. In the present adversary proceeding, however, Pirani has maintained that the value of the Hotel was no greater than the foreclosure price of $2,350,000.[4]

On September 28, 2011, in the state court guaranty action, Baharia, Gilani, Lalani and HNM filed a cross-claim against Pirani and Aziz for breaching their obligation under the Settlement Agreement to repurchase HNM's membership interest in Circle Sherman. Baharia, Gilani, Lalani and HNM filed a motion for partial summary judgment against Pirani and Aziz. On February 13, 2012, the state court granted their motion on the issue of whether Pirani had breached his obligation under the Settlement Agreement to repurchase HNM's membership interest. Pirani filed a motion for reconsideration or to set aside the summary judgment.

On March 6, 2012, OWB announced to the state court that it had settled with Pirani. OWB signed an assignment dated March 6, 2012, whereby OWB assigned, among other things, its claims against the defendants in the pending guaranty action to a

---

[3] Section 53.001(b) of the Texas Property Code provides that any person against whom a deficiency is sought may request a determination of the fair market value of property sold at foreclosure. If the fact finder determines the fair market value is greater than the foreclosure sale price, the person obligated on the indebtedness is entitled to offset the deficiency amount by the difference between the fair market value and the sale price. *Id.* § 51.003(c); *Interstate 35/Chisam Road, L.P. v. Moayedi,* 377 S.W.3d 791, 795 (Tex. App. – Dallas 2012). "Fair market value" is not defined, but § 51.003(b) provides that "[c]ompetent evidence of value may include, but is not limited to," expert opinion testimony, comparable sales, anticipated marketing time and holding costs, cost of sale, and the necessity and amount of any discount to be applied to the future sales price or cashflow generated by the property. TEX. PROP. CODE § 51.003(b).

[4] At trial, Pirani presented an appraisal from Milkes Realty Valuation, which appraised the fair market value of the Hotel at $1,390,000 as of August 2, 2011. This appraisal was created long after foreclosure for the purpose of litigation. The Court did not find the appraisal particularly credible or persuasive.

company owned and operated by Pirani, DFW Fuel City. DFW Fuel City paid OWB $300,000 to settle the claims and obtain the assignment. DFW Fuel City subsequently transferred OWB's claims against the defendants to Pirani, who had advanced all of the funds for the settlement with OWB, and Pirani forgave DFW Fuel City's indebtedness to him for the advance.

The state court called the guaranty action to trial on March 7, 2012. No one appeared to prosecute OWB's claims. At trial, therefore, the state court dismissed OWB's claim for breach of the note and guaranty against all of the defendants except Pirani. Pirani and Aziz also failed to appear for trial, and the state court dismissed their cross-claim against Baharia, Gilani, Lalani and HNM as well.

The state court entered a final judgment of dismissal on March 7, 2012.[5] On the same date, contemporaneously with the judgment, the state court entered a separate order that severed the dispute over the partial summary judgment previously awarded against Pirani. The state court assigned cause number 10-09222a to the severed proceeding. In the severed action, on June 14, 2012, the state court entered an Agreed Final Judgment awarding Baharia, Gilani, Lalani and HNM a judgment against Pirani for actual damages in the amount of $475,000 for the buy-out of HNM's membership interest in Circle Sherman, among other things.[6]

---

[5] The original dismissal was with prejudice. The state court entered an amended judgment on April 17, 2012, providing that the dismissal was without prejudice.

[6] At trial, Pirani argued that claim preclusion applies because the defendants did not challenge the fair market value of the Hotel prior to the entry of the Agreed Final Judgment. As this Court explained in its memorandum opinion denying Pirani's motion for summary judgment, the Agreed Final Judgment was not a judgment on the merits of OWB's suit to recover a deficiency from the guarantors. The state court entered the Agreed Final Judgment in a severed proceeding that involved only the defendants' cross-claims against Pirani for breach of the Settlement Agreement. The Court concludes that claim preclusion has no application to the defendants' request for a determination of the fair market value of the Hotel.

6

Before the defendants could begin collection of the Agreed Final Judgment, Pirani filed a petition for relief under chapter 11 of the Bankruptcy Code on July 17, 2012. He initiated this adversary proceeding the next day. In the disclosure statement filed with his plan of reorganization, Pirani described this proceeding as follows:

> On June 15, 2012, four of Debtor's creditors obtained a judgment against Debtor arising from a prior settlement agreement which Debtor had guaranteed ("Settlement Creditors"). Debtor is the owner and holder of a promissory note ("Note") and Guaranty which evidences the Settlement Creditors guaranty of the Note. Debtor has filed an adversary proceeding in his Bankruptcy Proceedings against the Settlement Creditors on the Guaranty, Abdul Karim Pirani v. Malik Baharia, et al; Adversary Proceeding No. 12-04114, requesting judgment against them in an amount in excess of $900,000.00, which is substantially greater in amount than the amount claimed by the Settlement Creditors based on their judgment.

The parties submitted a lengthy, joint pre-trial order to this Court. The Court entered the order on September 18, 2013. In the joint pretrial order, the defendants challenged the fair market value of the Hotel. The defendants thereby asserted an affirmative defense that the Hotel was worth more than the foreclosure price paid by OWB.[7] The defendants also asserted a counterclaim that Pirani has once again breached the Settlement Agreement by failing to release them from their guaranty of Circle Sherman's indebtedness to OWB.

---

[7] A primary dispute in this adversary proceeding is and has always been whether a deficiency exists. The joint pre-trial order includes facts relating to the value of the Hotel. In addition, the defendants cite to § 53.001 of the Texas Property Code in the joint pretrial order, contending that the proper market value of the Hotel exceeds the alleged debt on the Note. Despite Pirani's arguments to the contrary, the defendants clearly indicated a right to an offset under § 53.001 in the joint pre-trial order. Once entered, a pretrial order governs the trial. *Morris v. Homco Int'l, Inc.,* 853 F.2d 337, 342 (5th Cir. 1988). Alternatively, even if the defendants had failed to include an affirmative defense under § 53.001 in the joint pre-trial order, no substantial injury or injustice would be occasioned to Pirani as a result of an amendment of the order. *See Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972) ("[I]n the interest of justice and sound judicial administration, an amendment of a pretrial order should be permitted where no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight.").

## IV. CONCLUSIONS OF LAW

The defendants assert an unsecured claim against Pirani's estate for $620,612.51 arising out of the Agreed Final Judgment. Pirani objects to the claim. Pirani argues that the defendants' liability to him as the assignee of the Note and guaranty agreement more than offsets any debt he owes to the defendants.

Pirani, as the assignee of the Note and guarantee agreement, asserts a claim against the defendants for breach of their guaranty of Circle Sherman's indebtedness to OWB. The defendants argue that Pirani's right to recover from them is limited by his status as a co-guarantor. The defendants also assert a counterclaim against Pirani for breaching the terms of the Settlement Agreement by failing to release them from their guaranty when he acquired the Note and guaranty from OWB.[8] The parties request their attorneys' fees if they prevail on their respective breach of contract claims as permitted by the Settlement Agreement and Texas law.[9] *See* TEX. CIV. PRAC. REM. CODE § 38.001.

---

[8] The defendants also assert a claim for breach of fiduciary duty against Pirani. The defendants' breach of fiduciary duty claim is predicated on their claim that Pirani has breached and continues to breach his obligations under the Settlement Agreement. They argue that HNM is a continuing member of Circle Sherman due to Pirani's failure to re-purchase HNM's membership interest and that Pirani has breached his fiduciary duty to HNM by failing to release them from their guarantees and continuing this litigation, among other things. The defendants have not attempted to establish damages for the alleged breach of fiduciary duty separate and apart from their claim for breach of the Settlement Agreement. Under Texas law, "[a] party who seeks redress under two or more theories of recovery for a single wrong must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment." *Star Houston, Inc. v. Shevack,* 886 S.W.2d 414, 422 (Tex. App.-Houston [1st Dist.] 1994), *writ denied per curiam,* 907 S.W.2d 452 (Tex. 1995). If the prevailing party fails to elect a remedy, the trial court should render a judgment affording the greater recovery. *Pitman v. Lightfoot,* 937 S.W.2d 496, 533 (Tex. App. – San Antonio 1996, writ denied). The defendants in this case have not made an election of remedies. It appears, however, that the breach of contract claim potentially affords a greater recovery since there is a possibility that the defendants will recover their attorneys' fees if successful.

[9] Section 6.7 of the Settlement Agreement provides: The prevailing party in any action or proceeding brought to enforce any term or provision of this Agreement shall be entitled to reasonable attorney's fees and expenses from the other party, in addition to any other costs or expenses that party may be entitled to receive.

8

### A. The Right to Contribution Among Co-guarantors

In general, co-guarantors must bear equally the loss occasioned them by default of the principal obligor. Accordingly, a co-guarantor who has satisfied the obligee's claim against the principal obligor in full may maintain a suit for contribution against the other or others. *Huggins v. Johnston*, 35 S.W.2d 688 (Tex 1931); *Miller v. Miles*, 400 S.W.2d 4 (Tex. Civ. App. – Tyler 1966, writ refused n.r.e.). A co-guarantor also may purchase the note and guaranty and, as assignee, assert a cause of action against the other guarantors; however, the co-guarantor is limited in his recovery to only the contributive share of the other guarantors. *Byrd v. Estate of Nelms*, 154 S.W. 3d 149 (Tex. App. – Waco 2004); *Tomaszewicz v. Wiman*, 2002 WL 397003 at *2 (Tex. App. – El Paso March 4, 2002).

The right to contribution originated and is based in equity. *See Lee Lewis Const., Inc. v. Harrison*, 64 S.W.3d 1 (Tex. App. – Amarillo 1999), aff'd, 70 S.W.3d 778 (Tex. 2001). "The obligation to contribute is not founded upon contract ... but upon principles of equity and natural justice which requires [sic] that one shall not be made to bear more than his just share of a common burden to the advantage of his co-obligors." *McKelroy v. Hamilton,* 130 S.W.2d 1114, 1116 (Tex. Civ. App. – Waco 1939, no writ).

Texas courts have not allowed a co-guarantor to profit by purchasing the obligee's claim against the principal obligor for a discount and then suing the other guarantors for the full amount of the claim. Rather, in *Byrd v. Estate of Nelms*, 154 S.W.3d 149, 165 (Tex. App. – Waco 2004), the court calculated guarantors' contributive shares based on what a co-guarantor actually paid for the assignment of a note. *See also Knight v. Wirotzious*, 495 F.2d 543 (5th Cir. 1974) (discussing the equitable right of contribution

9

and holding that a co-maker of a note that had paid the note, which was then assigned to him by the bank, was entitled to contribution but could not recover attorneys' fees). The *Byrd* court offered the following explanation for its holding:

> Common sense dictates this result. All ... sureties agree to be liable for full payment of the note if the principal debtor defaults and are further liable for contribution to the co-surety who actually pays the creditor. Thus, each surety's ultimate liability may be fixed at his virile share of the note. If one of several sureties, as here, could purchase the note (or otherwise contractually subrogate to the creditor's rights) and then collect the full amount of the note from a co-surety, the purchasing surety would thereby escape liability for his virile portion of the debt. If [Appellants] were able to succeed on their theory, then upon the debtor's default, every surety would race to the bank to purchase the note. The Civil Code does not contemplate that a surety's liability should be premised upon the fortuity of being the first to purchase the debtor's note.

*Byrd*, 154 S.W.3d at 164-65 (quoting *Boyter v. Shreveport Bank and Trust,* 65 B.R. 944, 948 (W.D. La. 1986)).

Here, Pirani's status as a co-guarantor limits his right to recovery from the defendants to a claim for contribution. Pirani provided Texas Fuel City with $300,000 to purchase the Note and guarantees from OWB. Under Texas law, Pirani's claim for contribution is calculated based on this amount – not on alleged deficiency that OWB might have collected from the co-guarantors had it pursued its claim against them.

Co-guarantors generally must contribute equally. As the court explained in *Byrd*, a co-guarantor generally may not absolve himself from liability through an action for contribution. However, as the court also acknowledged in *Byrd*, the rule of equal contribution among co-guarantors is not absolute under Texas law. *Byrd*, 154 S.W.3d at 164 (citing RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 57 (1996)). Disproportionate contribution may be allowed if the parties agreed to make a different allocation amongst themselves or if one of the co-guarantors received a disproportionate

10

benefit from the transaction. *See, e.g., Dittberner v. Bell*, 558 S.W.2d 527, 534 (Tex. Civ. App. – Amarillo 1977) (holding that where one or more co-obligors received a disproportionate benefit from the transaction, then disproportionate contribution may be allowed).

The co-guarantors in this case, by agreement, made an unequal allocation of liability among themselves in the Settlement Agreement. In particular, Pirani agreed to use his best efforts to have OWB release the defendants from their guarantees or, if those efforts were unsuccessful, to release the defendants no later than July 9, 2012, through the sale of the Hotel or the refinancing of Circle Sherman's indebtedness to OWB. Pirani did not have the ability to release the defendants at the time of the Settlement Agreement, but he obtained that ability when he acquired the Note and guarantees from OWB in March 2012. He failed to do so. Instead, he has pursued the defendants, embroiling them in years of litigation and the attendant expenses, for what he claims they should have paid to OWB under the guaranty agreement.

For all the foregoing reasons, the Court concludes, first, that Pirani may not recover "contribution" from the defendants in excess of the amount he actually paid or caused to be paid to OWB. Second, Pirani breached the Settlement Agreement by failing to release the defendants from their guarantees upon acquiring the Note and guarantees from OWB. Third, as a result of the reallocation of guaranty liability in the Settlement Agreement, Pirani has no right to contribution from the defendants. And finally, Pirani has failed to establish a breach of the guaranty agreement by the defendants.[10]

---

[10] In light of this decision, the Court need not address the affirmative defenses relating to Pirani's breach of contract claim.

**B. Attorneys' Fees**

A party may recover reasonable attorney's fees if a claim is for an oral or written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(8). To recover attorney's fees, the claimant must be represented by an attorney, the claimant must have presented the claim to the opposing party, and the opposing party must not have tendered payment for the just amount owed before the expiration of the thirtieth day after the claim was presented. *Id.* § 38.002. There is no requirement in the statute that the demand for payment be made prior to the time suit is filed. *See Gateley v. Humphrey*, 254 S.W.2d 98, 100 (1952) (interpreting the predecessor statute); *see also Stuckey v. White*, 647 S.W.2d 35, 38 (Tex. App. – Houston [1st Dist.] 1982, no writ) (explaining that there is no requirement that a presentment for claim must be made prior to the time suit is filed to recover attorney's fees, only that the claim is not paid within 30 days once demand is made).

In this case, as previously discussed, the defendants have established their counterclaim for breach of contract by Pirani. The defendants were represented by an attorney throughout the litigation. And the defendants included a claim for their attorneys' fees in the parties' joint pretrial order.

Pirani objects to the requested fees on the grounds that not all of the time spent by the defendants' attorney related to the breach of contract counterclaim. The issue of whether Pirani had breached the Settlement Agreement was central to the parties' dispute and intertwined with the parties' various claims and counterclaims. Most of the work done by the defendants' attorney would have been necessary even if they had not asserted other counterclaims and defenses. Under Texas law, where a case involves claims for which attorneys' fees are recoverable and claims for which they are not recoverable (as is

the case here), and when legal services that advance both recoverable and unrecoverable claims are intertwined, the attorneys' fees need not be segregated. *Tony Gullo Motors I, L.P., v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2007).

While an award of fees is mandatory if a party has recovered on a breach of contract claim, the amount of reasonable fees is discretionary. *See Mathis v. Exxon Corp.,* 302 F.3d 448, 462 (5th Cir. 2002). The Texas Supreme Court has outlined eight relevant factors for courts to consider when determining the reasonableness of an attorneys' fee award:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).

In this case, the defendants engaged their present attorney in or around August 2009. They were unable to pay his bills as and when due. Accordingly, in or around November 2011, the defendants' attorney agreed to charge the defendants a flat monthly fee in exchange for an interest in their claims. The invoices he submitted to the defendants reflect that he charged them a monthly fee during those months he was actively working on their matters.

The issues involved in the litigation were fact-intensive. The litigation was contentious and involved both state and federal courts. The defendants' attorney is an

13

experienced litigator and charged reasonable rates for his services. Pirani sought more than $1 million from the defendants in this adversary proceeding.

The Court has reviewed the documents submitted by the defendants' attorney relating to his fees and costs. The Court, having considered all of the relevant factors, concludes that the defendants are entitled to an award of their attorneys' fees in the total amount of $100,000 plus costs in the total amount of $10,000.

### V. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff's objection to the defendants' proof of claim is overruled. The plaintiff has failed to establish a claim against the defendants for breach of their guarantees of Circle Sherman's indebtedness to OWB. The Court further concludes that defendants established that the plaintiff breached the Settlement Agreement by failing to release them when he obtained the Note and guaranty agreements from OWB. In addition to their claim for the amounts due them under the Agreed Final Judgment, the defendants may recover their reasonable attorneys' fees and costs from the plaintiff in the amount of $110,000.

The Court will enter a separate judgment consistent with this memorandum opinion. Any finding of fact that is construed to be a conclusion of law is hereby adopted as such. Likewise, any conclusion of law that is construed to be a finding of fact is hereby adopted as such.

Signed on 3/31/2014

_Brenda T. Rhoades_  MD
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE