
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ABDUL KARIM PIRANI, | § | Case No. 12-41916 |
| | § | (Chapter 11) |
| Debtor. | § | |
| | § | |
| | § | |
| ABDUL KARIM PIRANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 12-4114 |
| | § | |
| MALIK BAHARIA, ABDUL HAMID | § | |
| GILANI, NADIRSHA LALANI, and | § | |
| HNM PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION REGARDING MOTION TO AWARD
APPELLATE ATTORNEY'S FEES AND ADDITIONAL EXPENSES**

This proceeding is before the Court on the defendants' motion for an award of the fees and expenses they incurred on appeal. The plaintiff opposes the request. The Court, having reviewed the defendants' motion, the plaintiff's opposition,[1] and the relevant legal authorities, makes the following findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.

**RELEVANT BACKGROUND**

Abdul Pirani and his brother, Aziz, formed Circle Sherman, LLC for the purpose of owning and operating a Days Inn hotel in Sherman, Texas. Malik Baharia, Abdul Hamid Gilani, and Nadirsha Lalani formed HNM Partners, LLC for the purpose of holding a 50% membership interest in Circle Sherman. Circle Sherman borrowed funds from One World Bank ("OWB") to

---

[1] In his written opposition, the plaintiff requested a hearing on the defendants' motion in order to "permit plaintiff to conduct discovery of defendants' counsel." A hearing obviously is not the appropriate time to conduct discovery. Further, the Court finds a hearing unnecessary to address the issues raised by the plaintiff in this matter.

1

purchase and renovate the hotel. Pirani, Baharia, Gilani, Lalani and HNM each guaranteed Circle Sherman's obligations to OWB.

Pirani, Aziz, HNM, and HNM's members immediately disagreed about the use of funds to renovate the hotel. HNM and its members filed a lawsuit that ultimately resulted in a settlement agreement dated July 27, 2009. As part of the settlement, Pirani and Aziz agreed to re-purchase HNM's membership interest in Circle Sherman for $475,000. However, HNM never received the $475,000. Following subsequent litigation, the state court entered an agreed final judgment in favor of HNM and its members for actual damages in the amount of $475,000, among other things.

The hotel never became profitable. After the parties entered into the settlement agreement, Circle Sherman defaulted on its obligations to OWB. OWB foreclosed on the hotel and filed suit against the guarantors to collect the foreclosure deficiency.

Pirani purchased the deficiency claim from OWB for $300,000. After filing for bankruptcy, Pirani initiated this adversary proceeding seeking to collect approximately $1 million from the defendants based on their alleged breach of their guaranty obligations to OWB. Although Pirani was also a guarantor, he brought his complaint as the successor-in-interest to OWB, and he sought to collect the entire foreclosure deficiency from his co-guarantors. The defendants responded with numerous affirmative defenses. In addition, they asserted counterclaims against Pirani for breach of fiduciary duty and breach of the settlement agreement.

The defendants filed proof of their claims against Pirani in his bankruptcy case. They asserted their unliquidated claims for breach of fiduciary duty and breach of the settlement agreement as well as a claim for $475,000 arising out of the settlement agreement and the agreed

final judgment. Pirani objected to the allowance of the claims. The Court scheduled Pirani's objection for trial along with his adversary complaint against the defendants.

Pirani's bankruptcy case was a chapter 11 reorganization proceeding. Trial had not yet occurred when Pirani sought confirmation of a plan of reorganization. Thus, his confirmed plan provides for the following treatment of the defendants' claims:

> Class 10 Claims. The Class 10 Claims will be treated as follows:
>
> This Class consists of the Claims of Malik Baharia, HNM Partners LLC, Abdul Hamid Gilani, Nadirshah Lalani holding in the aggregate a judgment claim of $616,181.00 against the Debtor. This Claim is disputed and subject to an offset and recoupment by the Debtor in an amount in excess of $900,000.00. Debtor has filed an adversary proceeding in his Bankruptcy Proceedings against Claimants. To the extent that Claimants are determined to have an Allowed Claim against Debtor, Debtor shall pay the Allowed Claim of Claimants the full amount of their Allowed Claim in sixty equal monthly instalments of principal and interest at the rate of [seven point five per cent (7.5%)] per annum on the unpaid principal amount commencing thirty days following entry of a final order allowing such Claim.

At the trial in 2013, the defendants argued that they were released by paragraph 3.2 of the settlement agreement, which provided as follows:

> In the event that [Circle Sherman] obtains a third party investor for the purpose of purchasing HNM's Membership Interest, [Circle Sherman] shall in good faith make best efforts to have the Bank release Gilani, Baharia and Lalani from their personal guaranties of the loan. If [Circle Sherman] is unable to obtain a release from the bank of the guaranties, Gilani, Baharia and Lalani agree to continue to be guarantors of the Loan until July 9, 2012, at which time they shall be released either through [Circle Sherman's] refinancing of the Loan or sale of the Hotel.

In addition, HNM argued that it was effectively released by language in paragraph 3.1 of the settlement agreement stating that it "shall not be liable for any losses incurred by the Company nor entitled to any profits of the Company, and shall not be subject to any capital calls by the Company." Circle Sherman claimed the costs associated with OWB's foreclosure as a loss on its

3

2011 tax return. Thus, according to HNM, Pirani breached his obligations under the settlement agreement by seeking to collect from HNM for the alleged foreclosure deficiency.

In its memorandum opinion following trial, this Court concluded that Pirani could not seek to profit by purchasing OWB's deficiency claim for $300,000 and then suing his co-guarantors for the full amount of the alleged deficiency from the foreclosure of the hotel. Further, this Court held Pirani could not seek to collect a contributive share from HNM, Baharia, Gilani, Lalani, because he had promised to release them in paragraph 3.2 of the settlement agreement.

The Fifth Circuit affirmed that Pirani was limited to seeking to collect his co-guarantors' contributive shares of the $300,000 he paid for the note and guaranty. *See Matter of Pirani*, 824 F3d 483 (5th Cir. 2016). The Fifth Circuit also affirmed that Pirani had breached the release provision in the settlement agreement by seeking to collect from HNM's individual members. However, with respect to HNM, the Fifth Circuit reversed. HNM was not expressly included in the release language in paragraph 3.2 of the settlement agreement, and the Fifth Circuit remanded the issue of HNM's liability. The Fifth Circuit also remanded the defendants' request for an award of their attorney's fees for a determination of what percentage of the defendants' requested fees (through the date of trial) was attributable to their claim for breach of the settlement agreement.

The Court conducted a hearing on remand in July 2017. At the hearing, the defendants presented evidence regarding the attorney's fees and expenses they had incurred through the trial of the adversary complaint. They did not submit documentation of the fees and expenses they had incurred on appeal. They requested to address appellate fees and expenses after the Court issued its opinion on the remanded issues. The Court granted their request.

The Court entered its opinion on remand on September 29, 2017. Among other things, the Court determined that HNM was liable to Pirani for its contributive share of the $300,000 Pirani paid to OWB. The only remaining issue to be decided was the defendants' request for their appellate fees and expenses. On October 20, 2017, the defendants moved for an award of their appellate fees of $92,050 and additional expenses of $18,515.67

The plaintiff objects to an award of expenses and he seeks a reduction in the amount of the requested attorney's fees. With respect to the defendants' attorney's fees, the plaintiff argues that the amount of fees the defendants are requesting is too high and, therefore, unreasonable. The plaintiff also objects that the fees are not segregated between claims, counsel for the defendants failed to exercise reasonable billing judgment, and the fees are not adequately documented.[2]

## ANALYSIS

The Bankruptcy Code and Rules do not provide the defendants with a substantive right to their appellate attorney's fees and expenses. Their request is based on the settlement agreement and Texas law. In particular, paragraph 6.7 of the settlement agreement dated July 7, 2009, between the plaintiff and defendants, among others, provides that the "prevailing party" in an action to enforce the settlement agreement "shall be entitled to reasonable attorney's fees and expenses from the other party…."

### Attorney's Fees

---

[2] The plaintiff also objects that the defendants' motion "fails to be in conformance with the requirements of Rule 7054" of the Federal Rules of Bankruptcy Procedure. Rule 7054 was amended in 2014 to add subdivision (b)(2). Rule 7054(b)(2) allows a claim for adversary attorney's fees to be made by post-trial motion. Rule 7054(b)(2)(A) expressly allows bankruptcy courts to establish "special procedures to resolve fee-related issues without extensive evidentiary hearings." This Court does not have a specific local rule addressing appellate fees but, instead, establishes appropriate procedures on a case-by-case basis. Here, the Court invited the defendants to submit evidence of their appellate attorney's fees by motion, if appropriate, after the Court entered an opinion on remand.

As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *See, e.g., Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex. 1991); *Lesikar v. Rappeport,* 33 S.W.3d 282, 317 (Tex. App.—Texarkana 2000, pet. denied). Specifically, when a lawsuit involves multiple claims or multiple parties, the applicant has a duty to segregate non-recoverable fees from recoverable fees, and to segregate the fees owed by different parties. *Sterling,* 822 S.W.2d at 10–11. As a result, the fees incurred for the successful prosecution of a breach of contract claim must be segregated from those claims in the case for which attorney's fees may not be recovered. *Id.* at 11 (remanding for segregation of attorney's fees attributable to recovering policy benefits among various defendants); *Int'l Sec. Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546–47 (Tex. 1973) (remanding for segregation of attorney's fees incurred for fraud and deceit claims from recovery on policy claim).

Here, as to segregation by claims, the appellate attorney's fees that Baharia, Gilani and Lalani are seeking relate only to their successful counterclaim for breach of the settlement agreement, which gives rise to a right to reasonable attorney's fees. The requested attorney's fees do not include any time spent on their counterclaim for breach of fiduciary duty, which does not. As this Court has explained in its opinion on remand, the defendants' attorney inserted the breach of fiduciary duty claim from materials he had prepared in connection with pre-bankruptcy state court litigation. He did not spend any time developing or specifically pursuing the breach of fiduciary duty claim in this proceeding. Thus, as a matter of fact, the Court finds and concludes that the duty to segregate fees between the two counterclaims has been met in this case inasmuch as there are no fees related to the breach of fiduciary counterclaim.

As to segregation by clients, only three of the defendants (the individual members of HNM) prevailed on their claim for breach of the settlement agreement. Although Texas law

generally requires segregation of fees between claims and clients, *see Oadra v. Stegall,* 871 S.W.2d 882, 888 (Tex. App.—Houston [14th Dist.] 1994, no writ), a recognized exception to the duty to segregate arises when the attorney's fees rendered are in connection with claims "arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.' " *Sterling,* 822 S.W.2d at 11 (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied)). In this case, the Court finds that the attorneys' fees generated in connection with the defense of the individuals and the individuals' counterclaim for breach of the settlement agreement are so "intertwined to the point of being inseparable" from the fees generated by the defense of HNM and HNM's counterclaim for breach of the settlement agreement. The Court, therefore, finds and concludes that segregation of the fees charged to each of the defendants is not required or even possible.

Turning to the reasonableness of the requested fees, the Texas Supreme Court has identified a non-exclusive list of factors to consider in determining the reasonableness of attorney's fees. *See Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These factors include: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of representation in the case at issue will preclude other employment by the attorney; (3) the fee customarily charged in the locality for similar legal services; (4) the amount in controversy and the result obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the

services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

When applying for fees under the "lodestar" method, the applicant must provide the court with sufficient evidence. This evidence must include, "at a minimum, documentation of the services performed, who performed them and at what hourly rated, when they were performed, and how much time the work required." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2011). Contemporaneous billing records are not required. *Id.* Rather, attorneys who may not have contemporaneous billing records must reconstruct their work to provide the information necessary for a court to perform a meaningful review of their fee application. *Id.*

Here, counsel for the defendants supported his motion with an affidavit. In addition, he attached billing records, including a detailed list of his expenses, as an exhibit to the affidavit. His billing records describe (on a daily and hourly basis) how much time he spent on the appeal and, generally, what he was doing for his clients such as "review notices from court (.2)" and "prep and file exhibit list (2.0)".

The defendants' counsel is a solo practitioner and was the only attorney working on this matter for the defendants. This Court previously found that his hourly rate was reasonable. The defendants' counsel is an experienced attorney who has represented his clients since 2009. The dispute with the plaintiff involved novel issues that ultimately produced a published opinion from the Fifth Circuit. Further, counsel testified in his affidavit that the scope and complexity of the litigation occasionally precluded him from taking on other cases. He further testified that the maximum number hours he charges client in a day is 12, even if he works more, and his billing records reflect that he worked at least 12 hours for the defendants on 11 days.

Notably, in Texas, "[a]n attorney's testimony about the reasonableness of his or her own fees is not like other expert witness testimony." " *Garcia v. Gomez,* 319 S.W.3d 638, 641 (Tex. 2010). "Although rooted in the attorney's experience and expertise, it also consists of the attorney's personal knowledge about the underlying work and its particular value to the client." *Id.* The attorney's testimony "is similar to that of a property owner whose personal knowledge qualifies him to give an opinion about his own property's value" and "is not objectionable as merely conclusory because the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved." *Id.*

The plaintiff in this case objects that the total number of hours the defendants' counsel spent on the appeal is unreasonable. As part of the reasonableness inquiry, the fee applicant has the burden of demonstrating the exercise of billing judgment. *See Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F3d 795, 799 (5th Cir. 2006). Billing judgment refers to the exclusion of hours that are excessive, redundant, or unproductive. The remedy for a lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id.*

Here, the defendants' counsel exercised reasonable billing judgment by not billing the defendants for all of his time. The plaintiff has not objected to any particular time entries, but based on this Court's own review, counsel's time records do not contain block entries and are reasonably descriptive. The work the defendants' counsel did was necessary, and his three individual clients were the prevailing parties at trial and on appeal.

However, in light of the Fifth Circuit's reversal with respect to HNM's claim for breach of paragraph 3.2 the settlement agreement, as well as this Court's opinion on remand rejecting HNM's alternative arguments for breach of the settlement agreement, the Court finds that HNM

has not established a contractual right to its attorney's fees under the settlement agreement. Since only three of the four defendants are prevailing parties, and only three of the four defendants have established claims for breach of the settlement agreement, the Court finds that the defendants' requested fees should be reduced by 25% or $23,013. The Court, therefore, finds and concludes that the individual defendants have established that they incurred reasonable appellate attorney's fees in the amount of $69,037 arising out of Pirani's breach of the settlement agreement.

### Expenses on Appeal

Finally, with respect to the requested appellate expenses, the plaintiff argues that the Fifth Circuit has already denied the defendants' costs relating to the appeal. Indeed, the judgment issued by the Fifth Circuit contains the following decretal paragraph: "IT IS FURTHER ORDERED that each party bear its own costs on appeal." The defendants' request for their expenses on appeal does not address the Fifth Circuit's judgment, Federal Rule of Civil Procedure 54(d)(1), or Federal Rule of Bankruptcy Procedure 7054(b)(1). *See also* 28 U.S.C. § 1920 (allowing the court to tax as costs clerk fees, fees for printed or electronically recorded transcripts, fees for printing and witnesses, fees for costs of making copies, docket fees, and compensation of court-appointed experts).

The Court recognizes that "cost" is not synonymous with "expense." *See, e.g., Eagle Ins. Co. v. Johnson*, 982 F.Supp. 1456, 1458 (M.D. Ala. 1997). The expenses the defendants are seeking largely arise from their attorney's legal research, travel, meals, and postage as well as the fees charged by their appraiser and expert witness. However, the defendants' list of expenses also includes "court fees" of $236, a "record affidavit" of $169.50, and several charges for copies in the total amount of $680.21. The court fee, record affidavit charge, and copy charges appear

to be "costs" that the Fifth Circuit declined to award the defendants.[3]  With respect to the balance of the requested expenses, in the amount of $17,429.51, the Court finds and concludes that the expenses were reasonable and necessary and may be awarded to Baharia, Gilani and Lalani as prevailing parties under the terms of the 2009 settlement agreement.

## CONCLUSION

For the foregoing reasons, the Court concludes that Baharia, Gilani and Lalani are entitled to an award of their reasonable attorney's fees on appeal in the amount of $69,037.  The Court further concludes that Baharia, Gilani and Lalani are entitled to an award of their reasonable expenses in the amount of $17,429.51.  The Court will enter a separate order consistent with this opinion.

Signed on 03/30/2018

_Brenda T. Rhoades_   SD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[3] This Court issued its original decision on September 16, 2013, and the parties appealed.  The earliest expense the defendants are seeking is for copies and is dated August 23, 2013, which was prior to the appeal.  The defendants incurred the remainder of the requested expenses after September 16, 2013.  The Fifth Circuit issued its opinion on May 27, 2016.  The defendants continued to incur expenses after that date, including $166.69 for copies, due to the remanded issues.  The latest expense is dated July 26, 2017.